**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Margaret Rose Brown, | No. CV-17-01367-PHX-DGC |
| Plaintiff, | **TEMPORARY RESTRAINING ORDER** |
| v. | |
| CIT Bank NA, et al., | |
| Defendants. | |

Plaintiff Margaret Rose Brown's has filed a Motion for Temporary Restraining Order ("TRO") with notice. Docs. 1-1, 1-7. The Court held a hearing on May 9, 2017. For the following reasons, the Court will grant the TRO.

**I.    Background.**

The facts in this order are taken from Plaintiff's complaint. Plaintiff ("Mrs. Brown") is the widow of Gordon Brown ("Mr. Brown"). Doc. 1-1 at 1. In 2006, Mr. Brown obtained a home equity conversion loan, commonly known as a "reverse mortgage," from Defendant CIT Bank NA ("CIT Bank").[1] *Id.* at 2. A reverse mortgage

> is a form of equity release in which a mortgage lender (typically, a bank) makes payments to a borrower based on the borrower's accumulated equity in his or her home. Unlike a traditional mortgage, in which the borrower receives a lump sum and steadily repays the balance over time, the borrower in a reverse mortgage receives periodic payments (or a lump sum) and need not repay the outstanding loan balance until certain triggering events occur (like the death of the borrower or the sale of the home). Because repayment can usually be deferred until death, reverse mortgages function as a means for elderly homeowners to receive funds based on their home equity.

---

[1] Defendant Financial Freedom is a division of CIT Bank

*Bennett v. Donovan*, 703 F.3d 582, 584-85 (D.C. Cir. 2013). Mr. Brown's reverse mortgage was secured by a deed of trust recorded against the Browns' home in Apache Junction, Arizona. *Id.* at 4, 45-55. The loan documents listed Mr. Brown as the only borrower (*id.* at 44), as did the deed of trust (*id.* at 55). Mrs. Brown signed the deed of trust as a non-borrowing spouse. *Id.*

Mr. Brown passed away on March 21, 2016. Doc. 1 at 2. Under the terms of the reverse mortgage, the lenders could require immediate payment of the loan principal and accrued interest, provided that no surviving borrowers remained in residence at the property.[2] Doc. 1-4 at 3. On March 29, 2016, CIT Bank initiated correspondence with Mrs. Brown, offering to "evaluate possible workout options for your loan" and asserting that CIT Bank might refer the loan to foreclosure. Doc. 1 at 3. Three days letter, CIT Bank sent another letter, informing Mrs. Brown that she had 35 days to make a decision as to how to pay off the loan. Doc. 1 at 3.

Mrs. Brown then obtained a "Non-Borrowing Spouse Qualification Package" to apply for the Mortgagee Optional Election ("MOE") assignment program. The MOE program provides that when a non-borrowing spouse of a deceased borrower meets certain qualifications, the lender may assign the reverse mortgage to the United States Department of Housing and Urban Development ("HUD"), rather than foreclosing or otherwise requiring repayment of the loan. *See generally Plunkett v. Castro*, 67 F. Supp. 3d 1, 8-10, 13-16 (D.D.C. 2014); *see also* U.S. Dep't of Housing and Urban Dev., Mortgagee Letter 2015-15 (June 12, 2015); U.S. Dep't of Housing and Urban Dev., Mortgagee Letter 2014-07 (Apr. 25, 2014).

Mrs. Brown completed the initial paperwork to apply for the MOE and faxed it to CIT Bank. Doc. 1-1 at 3. CIT Bank acknowledged receipt on April 5 and informed Mrs. Brown that "Financial Freedom may assign Gordon Brown's HECM loan to the Department of Housing and Urban Development ('HUD') and HUD may allow you to

---

[2] While Plaintiff attaches this provision of the reverse mortgage to her Complaint, she disputes that the condition precedent for acceleration of the loan has been satisfied. Doc. 1 at 10.

- 2 -

remain in the Property if you provide certain information to Financial Freedom and all qualifying conditions are met." *Id.* at 3, 62. The letter specified that the following items must be provided to CIT Bank by July 14, 2016:

> Proof of current residency in the Property (*e.g.*, utility bills, Social Security benefits letter, etc.).
>
> The enclosed completed and signed Occupancy Certification, certifying that the Property is currently your principal residence and has been since the origination date of the HECM loan.
>
> You must provide proof of obtaining good and marketable title to the Property in your name or proof of legal right to remain in the Property for life (*e.g.*, executed lease, court order, etc.) within ninety (90) days of the passing of Gordon Brown.
>
> You must sign and return the enclosed Eligible Surviving Non-Borrowing Spouse Certification.
>
> You must sign and return a Tolling Forbearance and Release Agreement, which will be provided to you under separate cover after the Qualification Package is complete and all other requirements for the listed here [sic] have been met.

*Id.* at 62-63. Plaintiff asserts that she returned each of the required items to CIT Bank. *Id.* at 4. Two months later, however, CIT Bank sent a letter noting that the "Occupancy Certification" and the "Tolling Forbearance and Release Agreement" remained outstanding. *Id.* at 67-68. On June 17, Mrs. Brown sent the "Surviving Non-Borrowing Spouse Certification" and "Occupancy Certification" to CIT Bank. *Id.* at 68-73.

On October 14, 2016, CIT Bank sent a "Non-Borrowing Spouse Qualification Package – Denial" letter to Mrs. Brown. *Id.* at 75-77. This letter indicated that Mrs. Brown did not meet the requirements for assignment of the loan to HUD. *Id.* Two reasons were provided:

> Proof that either title is vested in your name or that you have a legal right to remain in the property for life was not provided.
>
> The initial NBS Qualification Package was incomplete and Financial Freedom was unable to complete your eligibility review within the sixty (60) days HUD allowed from July 19, 2016.

*Id.* at 77. After receiving the October 14, 2016 letter, Plaintiff called HUD. *Id.* at 6, ¶ 24. On October 19, 2016, Plaintiff again "faxed 50 pages of information to HUD." *Id.*, ¶ 25.

On November 2, 2016, Plaintiff's counsel sent a letter to Financial Freedom asking them to confirm receipt of all of the documents necessary to allow Plaintiff to stay in her home. *Id.*, ¶ 26. On November 30, 2016, Plaintiff sent all documents again to Financial Freedom via certified mail. *Id.*, ¶ 27. On December 7, 2016, Financial Freedom received Plaintiff's documents sent by certified mail. *Id.*, ¶ 28. On December 12, 2016, Financial Freedom sent Plaintiff letter stating they had received Plaintiff's documentation in which she expressed an interest in continuing to live in the Property, but that they did not receive all documentation required to determine the loans eligibility for assignment to HUD. *Id.*, ¶ 29. Financial Freedom stated that it must receive all required documentation by December 22, 2016, and that foreclosure proceedings would be initiated if the documents were not received. *Id.*, ¶¶ 29-30.

On December 14, 2016, Financial Freedom wrote to Plaintiff's counsel, and stated that "after further review of the loan, it was determined that the Beneficiary Deed and the Last Will and Testament of Gordon Brown served as sufficient proof that Mrs. Brown has a legal right to remain in the Property for life." *Id.*, ¶ 32. The letter went on to request updated documents, and asked Plaintiff's counsel to "[p]lease have Mrs. Brown sign and return the required documents no later than December 22, 2016." *Id.*, ¶ 33. The letter warned that "[a]lthough Mrs. Brown met our requirements of providing proof that she has a legal right to remain in the property for life, HUD may still require that the Property be vested in Mrs. Brown's name." *Id.* at 7, ¶ 34. On December 19, 2016, Plaintiff sent Defendants all documents by UPS delivery. *Id.*, ¶ 35.

Without apparent further communication, Defendant MTC initiated foreclosure proceedings on February 10, 2017, scheduling a non-judicial foreclosure of the Property for May 17, 2017. *Id.*, ¶ 36.

**II. Legal Standard.**

The standard for issuing a TRO is the same as that for issuing a preliminary injunction. *Phillips v. Fremont Inv. & Loan*, No. CV-09-2585-PHX-GMS, 2009 WL 4898259, at *1 (D. Ariz. Dec. 11, 2009) (citing *Brown Jordan Int'l, Inc. v. The Mind's*

*Eye Interiors, Inc.*, 236 F. Supp. 2d 1152, 1154 (D. Haw. 2007)). A plaintiff must show that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are 'serious questions going to the merits' – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under the serious questions variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072. "Serious questions are 'substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'" *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir.1988) (en banc) (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1952) (Frank, J.)).

**III. Analysis.**

Plaintiff argues that she is likely to succeed on the merits because "Defendants do not have the right to foreclose on Plaintiff's real property" and she is eligible for the MOE program. Doc. 1-7 at 7. There is, unfortunately, a dearth of authority regarding the MOE program. Sixty-three cases on Westlaw have cited 12 U.S.C. § 1715z-20. Of those, no Ninth Circuit case appears to deal directly with the question of whether a surviving spouse is *entitled* to access the MOE program following a spouse's death. With more detailed analysis required than is now possible, the Court cannot conclude that Plaintiff is likely to succeed on the merits of this issue.

Plaintiff also alleges that she can assert a contractual claim against Defendants and that the notice of trustee's sale is defective under Arizona law. Defendants presented

serious responses to these allegations at the hearing, but the responses, like the statutory issues mentioned above, will require further investigation and analysis by the Court.

Plaintiff has raised serious questions. The Court finds that her allegations and Defendants' responses present substantial questions – a fair ground for litigation – and thus deserve more deliberative investigation. *Republic of the Philippines*, 862 F.2d at 1362.

Plaintiff is 72 years old. She has lived in her home for 20 years. Plaintiff will be irreparably injured if the trustee's sale proceeds and she loses her home. In Arizona, if a homeowner fails to obtain a TRO enjoining a trustee's sale, the homeowner "waive[s] all defenses and objections to the sale." A.R.S. § 33-811(C).

The balance of hardships also tips sharply in Plaintiff's favor. While Plaintiff will be irreparably harmed if she loses her home, Defendants will only be delayed if the trustee's sale is postponed while the Court considers the merits of Plaintiff's claim.

Public policy favors granting the TRO. If Plaintiff's claim is correct, a trustee's sale of her home would be unwarranted and improper.

Because Plaintiff has raised serious questions, the balance of hardships tips sharply in her favor, and the other requirements for a TRO are satisfied, the Court will grant a TRO.

**IT IS ORDERED:**

1. Plaintiff's Motion for a Temporary Restraining Order (Doc. 1-1, Doc. 1-7 at 2-9) is **granted**. Defendants are enjoined from proceeding with the trustee's sale of the real property located at 1095 South Grand Drive, Apache Junction, Arizona, 85220.

2. By agreement of the parties at the hearing, this TRO shall remain in effect until **May 30, 2017**.

3. The Court will hold a preliminary injunction hearing on **May 30, 2017**, at **2:00 p.m**. Defendants shall file a response brief by **May 18, 2017**. Plaintiff shall file a reply by **May 24, 2017**.

Dated this 9th day of May, 2017.

*David G. Campbell*
United States District Judge